IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EVONA S.-J.,<br><br>               Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of<br>Social Security,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 4:19-cv-00037-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Evona S.-J.'s appeal from the decision of

the Social Security Administration denying her application for disability and disability insurance

benefits income.  The Court held oral arguments on February 26, 2020.  Having considered the

arguments of the parties, reviewed the record and relevant case law, and being otherwise fully

informed, the Court will affirm the administrative ruling.

## I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to

determining whether his findings are supported by substantial evidence and whether the correct

legal standards were applied.[1]  "Substantial evidence 'means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"[2]  The ALJ is required to

consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]  The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

On November 17, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on July 16, 2014.[7]  The claim was denied initially and upon reconsideration.[8]  Plaintiff then requested a hearing before an ALJ, which was held on January 23, 2018.[9]  The ALJ issued a decision on June 15, 2018, finding that Plaintiff was not disabled.[10]  The Appeals Council denied Plaintiff's request for review on April 3, 2019,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 170–73.

[8] *Id.* at 46, 62.

[9] *Id.* at 32–45.

[10] *Id.* at 7–26.

[11] *Id.* at 1–6.

[12] 20 C.F.R. § 422.210(a).

On May 14, 2019, Plaintiff filed her Complaint in this case.[13] The Commissioner filed his Answer and the administrative record on August 13, 2019.[14] On August 19, 2019, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15]

Plaintiff filed her Opening Brief on October 3, 2019.[16] Defendant filed his Answer Brief on November 7, 2019.[17] Plaintiff filed a Reply Brief on November 22, 2019.[18]

B.     MEDICAL HISTORY

Plaintiff claims that she was unable to work due to degenerative disc disease, depression, and anxiety.[19] Plaintiff also suffered from a torn rotator cuff in February 2016.[20]

C.     HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she could no longer perform her previous secretarial position because of the physical demands of that job.[21] Plaintiff stated that

---

[13] Docket No. 3.

[14] Docket Nos. 8, 9.

[15] Docket No. 17.

[16] Docket No. 19.

[17] Docket No. 22.

[18] Docket No. 24.

[19] R. at 204.

[20] *Id.* at 763.

[21] *Id.* at 36.

she could do light housework, but would hire someone to do anything that was more physically demanding.[22]

After the hearing, the ALJ propounded interrogatories to the Vocational Expert ("VE").[23] The VE identified Plaintiff's past relevant work as bookkeeper, secretary, receptionist, and office manager.[24] The ALJ asked the VE to assume a hypothetical individual with Plaintiff's background who could perform sedentary work, except she could occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; and was capable of occasional overhead reaching with her right arm.[25] The VE stated that the individual could perform Plaintiff's past jobs either as actually performed or as generally performed in the national economy.[26] Though less than clear, it appears that the VE concluded that the receptionist position would be eliminated as actually performed but the rest would remain as generally performed.[27] The interrogatories then inquired whether the Dictionary of Occupational Titles ("DOT") directly addressed overhead reaching and, if it did not, asked the VE to explain the basis for his response.[28] The VE stated that his response was

---

[22] *Id.* at 38.

[23] *Id.* at 286–89.

[24] *Id.* at 286.

[25] *Id.* at 287.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 288.

based on his experience as a job developer.[29] He then stated that there was no conflicts between his answers and the DOT.[30]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 16, 2014, through her date last insured of September 30, 2016.[31]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  degenerative disc disease of the cervical and lumbar spine, obesity, and right shoulder rotator cuff disorder.[32]   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[33]  The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work, except she could only occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never craw; and was capable of occasional overhead reaching with her right arm.[34]  At step four, the ALJ determined that Plaintiff could perform her past relevant work as bookkeeper, receptionist, and office manager as generally performed in the national economy and, therefore, was not disabled.[35]

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at 13.

[32] *Id.* at 13–15.

[33] *Id.* at 15.

[34] *Id.* at 15–20.

[35] *Id.* at 20.

## III. DISCUSSION

Plaintiff raises one issue in her brief: whether the ALJ erred at step four in concluding that Plaintiff could perform her past relevant work.

The Tenth Circuit has set forth a three-phase process the ALJ must follow at step four.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.[36]

Plaintiff complains that the ALJ's analysis is deficient and does not provide the Court with sufficient information for review. Plaintiff does not directly challenge the ALJ's RFC determination. The ALJ's RFC determination contains a thorough discussion of the medical evidence and is supported by substantial evidence. Therefore, there was no error at phase one of the step four analysis.

Plaintiff appears to take issue with phases two and three. In his decision, the ALJ stated:

> As required by SSR 82-62, based on the record (Exhibits B2E, B4E) and the claimant's testimony, her work as a bookkeeper, receptionist, secretary and office manager was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. The vocational expert reported that an individual with the claimant's age, education, and residual functional capacity could perform the claimant's past job, specifically, the bookkeeper, receptionist, secretary and office manager jobs as generally performed in the national economy. (Exhibit Bl 7E). Thus, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as generally performed.[37]

---

[36] *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted).

[37] R. at 20.

The ALJ's analysis, while brief, was not legally deficient.  Specifically, the ALJ obtained

testimony and interrogatory answers from a vocational expert.  The ALJ asked the VE to

consider a hypothetical individual with Plaintiff's background who is limited to sedentary work

and has the same limitations as Plaintiff's RFC.  In response, the VE stated that the hypothetical

individual could perform Plaintiff's past relevant work, both as actually performed and as

generally performed.  The regulations provide that an ALJ may rely on a vocational expert in

determining whether Plaintiff can perform her past relevant work.[38]  This includes evidence

based on the VE's "expertise or knowledge concerning the physical and mental demands of a

claimant's past relevant work, either as the claimant actually performed it or as generally

performed in the national economy."[39]  Based on the vocational expert's interrogatory answers,

the ALJ made the finding that Plaintiff had the ability to perform her past relevant work.  This is

sufficient.[40]

Plaintiff makes much of the fact that the ALJ provided no evaluation of Plaintiff's past

work as actually performed.  However, SSR 82-61 makes clear that "a claimant will be found to

be 'not disabled' when it is determined that he or she retains the RFC to perform:  1. The actual

functional demands and job duties of a particular past relevant job; *or* 2. The functional demands

and job duties of the occupation as generally required by employers throughout the national

---

[38] 20 C.F.R. § 404.1560(b)(2).

[39] *Id.*

[40] *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis.  There was nothing improper about this.").

economy."[41]  Therefore, a "claimant bears the burden of proving [her] inability to return to [her] particular former job and to [her] former occupation as that occupation is generally performed throughout the national economy."[42] The ALJ focused on the second prong, looking at Plaintiff's past jobs as generally performed.  Plaintiff has not shown that she could not perform each of these jobs as generally performed.[43]  And, as discussed, the ALJ was entitled to rely on the VE's opinion in reaching his conclusion that she could.

In reply, Plaintiff argues that the ALJ could not rely on the VE's hearing testimony because the hypothetical question asked at the hearing differed from the RFC adopted by the ALJ.  However, the ALJ's step four analysis is based on the VE's interrogatory answers.[44]  Thus, any discrepancies between the hearing testimony and RFC determination are immaterial.

Plaintiff further argues that the VE's interrogatory answers were flawed because he erroneously determined that Plaintiff could perform most of her past relevant work as actually performed.  Even assuming this is error, Plaintiff bears the burden of showing both her "inability to return to [her] particular former job and to [her] former occupation as that occupation is generally performed throughout the national economy."[45]  Here, the ALJ narrowed the list of jobs identified by the VE but, even so, concluded that Plaintiff could perform some of her past relevant work as generally performed.  Even if the VE erred in determining that Plaintiff could

---

[41] SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982).

[42] *Andrade v. Sec. of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993); *see also* SSR 82-61, 1982 WL 31387, at *2.

[43] *Id.*; *see also Nielson v. Sullivan*, 992 F.2d 1118, 1120 ("The claimant bears the burden of proof through step four of the analysis.").

[44] *See* R. at 20 (citing interrogatory answers).

[45] *Andrade*, 985 F.2d at 1051; *see also* SSR 82-61, 1982 WL 31387, at *2.

perform her past work as actually performed, reversal is not required because Plaintiff has failed to show that she could not perform her past relevant work as generally performed.

Plaintiff next argues that the VE failed to answer all of the relevant interrogatory questions. Plaintiff states that the ALJ failed to "explain how the RFC precludes the performance of each job as actually performed by the claimant and as generally performed in the national economy."[46] But this argument confuses the interrogatory and the VE's response. Interrogatory 8 states: "Could the individual described in item #7 perform any of the claimant's past jobs as actually performed by the claimant or as generally performed in the national economy."[47] There are two options: "Yes" and "No." The VE answered "Yes" and then went on to identify the jobs that would remain, both as performed and as generally performed. The language relied upon by Plaintiff only applies if the VE answered "No." Since he answered in the affirmative, there was no need to provide this explanation.

Plaintiff also takes issue with the VE's failure to explain how the mental and physical demands of the jobs identified would be accommodated by Plaintiff's RFC.[48] While it is true that the VE did not provide a detailed answer, inherent within his identification of jobs a person with Plaintiff's RFC could perform is the determination that such a person had the ability to meet the demands of those jobs.

---

[46] Docket No. 24, at 3 (quoting R. at 287).

[47] R. at 287.

[48] *Id.*

Plaintiff points to other alleged errors in the VE's interrogatory answers but fails to demonstrate that these errors require remand. Specifically, Plaintiff has failed to show that these alleged errors make the VE's relevant answers unreliable.

Finally, Plaintiff argues that the ALJ's decision is inconsistent with his RFC determination. Specifically, the RFC included only occasional overhead reaching with Plaintiff's right arm, but all of the jobs identified require frequent reaching. Plaintiff argues that the ALJ was required to investigate this conflict between the RFC and DOT.[49]

This precise issue was addressed by the Tenth Circuit in *Segovia v. Astrue*.[50] There, as here, the plaintiff was limited to occasional overhead reaching while the positions identified required frequent reaching.[51] However, overhead reaching is not separately classified and reaching includes reaching in any direction.[52] Because of this, the Tenth Circuit found that "even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching."[53] In *Segovia*, the VE was aware of the plaintiff's overhead reaching restriction, yet testified that the plaintiff could perform jobs in the national economy and that his opinion was consistent with the DOT.[54] The Tenth Circuit held that "[i]n these circumstances,

---

[49] *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

[50] 226 F. App'x 801 (10th Cir. 2007).

[51] *Id.* at 804.

[52] *Id.*; *see also* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) ("Reaching (extending the hands and arms in any direction).").

[53] *Segovia*, 226 F. App'x at 804.

[54] *Id.*

the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case."[55] The court went on to note that "the DOT descriptions for [the jobs identified by the VE] do not indicate that these jobs predominantly involve overhead reaching rather than other types of reaching."[56]

The Court finds *Segovia* persuasive and concludes that the same result is warranted here. The VE was aware of Plaintiff being limited to occasional overhead reaching. Despite this restriction, he still stated that she could perform her past relevant work. In addition, the VE was specifically asked about whether the DOT addressed overhead reaching.[57] The VE stated that it did not, but that his answer was based on his experience as a job developer.[58] The VE went on to state that there were no conflicts between the occupational evidence he provided and the occupational evidence contained in the DOT. The ALJ was entitled to rely on these statements.[59] Based on this, there was no apparent conflict the ALJ was required to investigate. Moreover, even if there was a conflict between the DOT and the VE's statement, it was reasonably explained by the VE. Finally, as with the jobs in *Segovia*, the job descriptions for Plaintiff's past relevant work do not reflect that they predominately involve overhead reaching as opposed to other types of reaching.[60] Therefore, remand is not required on this ground.

---

[55] *Id.*

[56] *Id.*

[57] R. at 288.

[58] *Id.*

[59] SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (stating that a VE's experience can provide a basis for relying on the evidence from the VE).

[60] *See* Docket No. 22, at 11–12.

## IV.  CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision below.

DATED this 17th day of March, 2020.

BY THE COURT:

Paul Kohler
United States Magistrate Judge